Our third case for argument this morning is Nasello v. Eagleson. Ms. Watt. Ms. Watt. Good morning, Your Honors. May it please the Court. Kimberly Watt with SB2 for Plaintiffs' Appellants. We're here today because DHS and HFS refuse to comply with the federal statutes requiring deduction of uncovered but necessary medical care from post-eligibility income. Appellees would like the Court to continue to allow them to do this behavior by holding that 1396AR1 does not confer an enforceable right and by dismissing Plaintiffs' ADA Rehabilitation Act and reasonable promptness claims. 42 U.S.C. 1396AR1 requires that uncovered but necessary medical care be deducted from beneficiaries' post-eligibility income. This is not the first time a state has balked at this requirement. As thoroughly discussed in the Fourth Circuit case, Maryland Department of Health v. CMS, states opposed the deduction of prior uncovered nursing home care and petitioned CMS to make the change by eliminating the deduction. CMS did. Congressional response was swift and firm. Within 90 days, Congress enacted 1396AR1, making the deduction a statutory requirement and backdating the effective date to the date of the CMS change. Maryland still didn't want to imply the deduction and sought a state plan amendment, which CMS denied. Time is short, and I think we need to address the initial issue with respect to this subsection, which is how it's enforced. Certainly it can be enforced by negotiations or even diktat between the federal government and the state. But, of course, you don't represent the state or the federal government. So your claim depends on the creation of a private right of action that isn't in the statutory language. Has either the Supreme Court or any court of appeals held that there is such a private right of action? Not with respect to AR1, but with respect to other provisions of the Medicaid Act. We were arguing now about AR1A, so your answer is no. No appellate court has. Has the Supreme Court in the last generation recognized or implied a private right of action under any state federal revenue program? I think Wilder, which is now 30 years old, is the last, and they have said quite often that that represents a bygone era of interpretation. You're asking us to do something that no court of appeals has done and that the Supreme Court hasn't done in 30 years. Is there some reason why we should do that? Yes, Your Honor. You should do that because otherwise the state gets to continue to completely disregard federal law. And that's just not acceptable. That doesn't address the question who it is who enforces the federal law. Is it the federal government or is it everyone? You're arguing for everyone. I take it the federal government doesn't share your view of the legal requirements. That's part of your problem. No, Your Honor. I say, I mean, I show there's the CMS case with Maryland where CMS says that this is, in fact, a requirement. But the states still seek to get around this by ignoring the requirement. And here, Illinois completely ignores the requirement. And they need to be held accountable. And the way to hold them accountable is for an individual to be able to bring a suit and ask that the court enforce federal law. Other provisions of the Medicaid Act have been held to be privately enforceable. And the language of AR1 is similar to those. The blessing test is a proper test. The third prong is clearly met because the statute is clearly couched in a mandatory rather than precatory language. The second prong is met because the right's not so vague and amorphous that it would strain judicial resources. The provision is clear that incurred necessary medical expenses that are not covered by Medicaid are to be deducted from post-eligibility income. That leaves just the question of whether Congress intended the provision to benefit individuals. And here, because Congress specifically created AR1 as a response to the CMS change, eliminating the deduction, I would say that Congress intended to create this right. The statute focuses on post-eligibility income of individuals, post-eligibility treatment of individuals' income. And the wording makes clear that individual income is the determination. This isn't just a provision like A17 where it says, hey, you need to create this policy. This says, hey, you weren't enforced, that you weren't enforcing this, you weren't, you didn't observe this policy, that you, we're going to make it a statute and require you to do it. In the term of long-term Medicaid, there are two different eligibility calculations. There are two different income calculations. There's pre-eligibility when the state looks at your income and determines if you make below $1,366. If you do, then there's an eligibility determination. But then there's post-eligibility determination of income. And that one is important because that's where it's determined what part of a beneficiary's income is used to offset the care that Medicaid is providing, but also allows them to pay prior expenses, other incurred expenses, other uncovered medical expenses. In the case at hand, it has taken years for these plaintiffs to get their Medicaid coverage. Ms. O'Deer and Ms. Adelot took them more than four years to get coverage. They have four years of uncovered nursing home expenses. They have more than $100,000 that they owe to these nursing homes for prior care. They're personally liable for this money. The interest can accrue. Litigation can be filed against them. In the case where there's an innocent spouse, liens may be filed on the houses, on their residences. One purpose of the Medicaid Act is to ensure that beneficiaries have sufficient income to pay for medical services that are not covered by Medicaid. There's also policy reasons to enforce this, avoiding octogenarian bankruptcies to discharge medical debt and to ensure that providers get paid so that everybody else's costs don't go up. Appellees want you to find that there is no enforceable individual right here, but that ignores the language of 1396AA3, AA8, A10, A13, all of which, even though they are arguably addressed to the agency, have been found to create a right. This statute is like those statutes. It's not a part of A17 because Congress created a separate statute. Congress could easily have gone in and amended A17 and just added this little provision, but they didn't. They created an entirely separate provision and said, hey, this is the deduction. You must apply it. Plans also challenge the agency's failure to provide the deduction and to provide notice of the availability of the deduction under the ADA. As conceded by appellees in their brief, the ADA is not limited solely to actions taken because of a disability, but it also applies to correct disproportionate impact to the disabled. The agencies argue that the plaintiffs did not provide evidence to support their ADA claims. This ignores that the underlying motion was a 12B6 motion to dismiss. Plaintiffs need not provide evidence at this stage, and the federal pleading standard is a notice pleading. The first amended complaint has sufficient allegations of all four elements of an ADA claim for the court to find that the agency's policies of not deducting incurred medical expenses and not informing Illinois residents of the right to the deduction affect the disabled more than it affects other people. The residents bring a claim based on the Medicaid reasonable promptness provision. By failing to provide the residents full benefit in the first place, the agencies are failing to promptly provide plaintiffs timely access to their benefits. 13AA8 requires the beneficiaries medical assistance shall be furnished with reasonable promptness. The agency's position that providing some portion of the benefit... Counsel, how does that statute deal with the amount of benefits rather than the speed at which the state acts? Your Honor, if a manufacturing company provided half of an order by the deadline, it wouldn't be timely. If I only filed half my brief by the deadline, it wouldn't be timely. I'm not worried about that. It sounds almost like wordplay. The statute requires action, let's say, by a specific time. The dispute is not with whether action occurred by that time. The dispute is with the substance of the state's decision. Why does a time requirement allow review of substance? That's my question. Your Honor, this isn't a mere miscalculation. Unlike what the appellees are trying to convince you that this is just a miscalculation, it's not like they're deducting some portion of it. They're like, oh, you can deduct $50. That's not what they're doing. They're completely refusing to allow the deduction at all. I'd like you to address my question rather than the question you wish I had asked. I'm trying to address your question on the amount and that they're not allowing any portion of the deduction. Can you clarify your question for me? I've now asked it twice. Let me try a third time. Just as a matter of principle, why does a statute requiring action by a particular time allow review of the substance of that action as opposed to the time at which the action occurs? Because by not providing the entire benefit, it's not a timely benefit. If you only provide a portion, it's not the whole. If you've got a federal statute, there are a lot of federal statutes requiring action by a particular time. If a bank applies for certain benefits, the Federal Reserve has to render a decision within 90 days. Suppose the Federal Reserve renders its decision and says your application is denied. Does that statute, which allows review only of whether the Fed has acted, permit a court to review the substance of that decision? These kinds of issues have been litigated a lot, and the answer is no. You say the answer ought to be yes, and I'm trying to figure out why. Because it's plaintiff's position that it's not prompt if it's only partial payment, Your Honor. But it is prompt. It's just not what the plaintiff asked for. Your Honor, I see that my time is gone, and I had reserved three minutes. I'm sorry. You're welcome to reserve time for rebuttal. I had reserved three minutes. Thank you, Your Honor. Certainly. Ms. Schenevert. Good morning, Your Honors, and may it please the Court. I'm Assistant Attorney General Caitlin Schenevert, and I represent the defendants' athletes. I'll begin by addressing the district court's conclusion that Section 1983 AR1A does not create a privately enforceable right of action. The district court correctly so concluded because this statute fails the first blessing factor, which requires that Congress must have intended that the provision in question benefit the plaintiff. Ms. Watt was arguing a moment ago about the connection to AA17 and that Congress could have amended AA17 if it had wanted to. However, we don't have to guess that AR1A is connected to AA17 and is meant to supplement it. That's specifically in the language of AR1 itself. The very beginning of Section R1A states that for purposes of Section 1396 AA17, there shall be taken into account amounts of incurred expenses, and then it goes on to delineate certain expenses that state agencies must take into account when calculating an individual's income. And several circuits that have reviewed and looked at Section 1396 AA17 have concluded that it does not create a privately enforceable right of action. That's because AA17, often called the reasonable standards provision of the Medicaid Act, requires that a state plan for medical assistance must include reasonable standards for determining eligibility for and the extent of medical assistance under the plan. R1A, which was then enacted, further explains the reasonable standards that must be taken into account by state agencies when it comes to calculating income. And for similar reasons that AA17 has been held by other circuits to not create an enforceable right of action, so too does R1A. Aside from that connection to AA17, the language of R1A itself further suggests and in fact leads to the conclusion that Congress did not intend to create rights for individuals under this section. Again, the Supreme Court has made clear that there must be an unmistakable focus on the benefited class. Here, the language of R1A is directed to the state agencies, explaining to those agencies the types of income that must be taken into account when calculating an individual's income for purposes of post-eligibility Medicaid determination. Ms. Watt today and in her briefs argued or explained that the standard must be met here because we are talking about individuals' income. While an individual may or may not have an interest or a benefit in a particular calculation made by a state agency, that benefit or interest is simply not enough to rise to the level of a right. The Supreme Court in Gonzaga explained that it is rights, not the broader or vague benefits or interests that may be enforced under Section 1983. I'd like to briefly respond regarding the Fourth Circuit case, the Maryland Department of Health and Mental Hygiene case. That's entirely distinguishable as we set forth in our brief. That had no analysis as to whether R1A, excuse me, what can be enforceable under Section 1983. That did not involve individuals challenging Maryland's plan or that they hadn't properly calculated anything. This was litigation between the state of Maryland and CMS over whether or not Maryland could include or reduce certain deductions. So there's simply no analysis to conclude based on the reasoning in Maryland that that must mean that there is an enforceable right of action for individuals under R1A. And moreover, to the extent that this court may determine that R1A is privately enforceable, that private enforceability is only, the statute is only presumptively privately enforceable under Section 1983. And that presumption may be rebutted if there is an enforcement scheme that allows an individual some sort of other administrative right to challenge the decision. And such a right exists here. As we set forth in our brief, Section 1386AA3 requires a fair hearing provision. The federal regulations implementing those statute explain further the types of decisions that should be subject to a fair hearing provision, which includes decisions to suspend, terminate, or deny benefits. And to that end, the state of Illinois has implemented several regulations allowing individuals the ability to challenge and appeal decisions made by the state agencies when it comes to their benefits. And so for all of these reasons, and those stated in our brief, the district court correctly concluded that Section R1A of the Medicaid Act does not create a privately enforceable right of action. As to plaintiff's claim brought under Section 1396AA8 of the Medicaid Act, as this court has explained in its questioning today and as we argued in our brief, plaintiffs have failed to plead a cause of action under this statute. They are not at all arguing that they were denied the ability to apply for Medicaid benefits. They are not arguing or have not alleged that they were not given their benefits with reasonable promptness. At bottom, what their allegations amount to is an allegation that they disagree with the calculation done by the state agencies here. And again, to the extent there is a disagreement about those calculations, there is an administrative process in place for individuals to appeal those decisions should they disagree with them. And so there is no cause of action for plaintiffs as they've alleged it here under Section 1396AA8. Furthermore, the district court properly dismissed plaintiff's claims under the ADA and the Rehabilitation Act. As the district court properly found, the complaint did not allege any facts to raise a right of relief beyond the speculative level that the defendants here made any decisions based on plaintiff's disabilities or because of those disabilities. I would just like to note in plaintiff's brief, in plaintiff's brief, they argued that there was not a need to allege specifically that they requested an accommodation and they cite two cases explaining that where the accommodation is so obvious, they're not even the evidence that an individual requested that accommodation. There's nothing obvious about plaintiff's allegations here that would mean there would obviously be a particular accommodation that would be reasonable. Again, there's no allegations here about exactly what plaintiff's disabilities are or how those impede their everyday lives. You know, the judge, can I interrupt just saying, the judge did comment that there were possibly some amendments that could have been made or something to the complaint, but since she didn't allege them, but he sort of suggested them, but then did not go on to allow any amendments. Is there, would there be something they can do to amend their complaint that would put this more in line? If you know what I'm talking about, that area where he was discussing possibly possible changes. I believe, Your Honor, are you referencing this statement that the court was assuming that the individuals had disabilities as defined under the ADA? I don't, to be honest with you, I don't have the whole thing in front of me, but as I recall in the court's decision, was just sort of suggesting some amendments that could have been made, but then didn't say, go ahead and amend. He just, that was it. That was the end of the case. So I will say that the court acted within its discretion when it dismissed this complaint without leave to amend. This court has held that where a plaintiff has not explained how it might cure or how they may cure the deficiencies in the complaint, the district court acts within its discretion in dismissing without leave to amend. Plaintiffs have not. I think it's correct. He did not go on to say, if you do this, that or the other thing, as he sort of suggested, then that may change it, but he did not. He went on and said, that's it. Whatever could have been done was not, and therefore it's over. And to the extent that may be true of the district court's order, again, plaintiffs themselves have never actually explained how they might be able to amend their complaint to properly bring an allegation under the ADA or the Rehabilitation Act claim. That was not done at all in the district court. And indeed plaintiffs even here on appeal have not fully explained how they might be able to amend their complaint to properly plead a cause of action under either statute. Well, the only way that would happen, if for some reason we decided to remand to give them an opportunity to amend, which is not necessarily what I'm saying. I'm just pointing out that there were some things that could have been done, but were not. That's all. Again, to the extent that may, I'm not quite sure the exact proportion of the district court's order that Your Honor is referencing, but to the extent that that may be true and that there was some reference to the district court about possible additional allegations, even in response to this order, the plaintiffs did not take the opportunity to ask the court to revisit its decision or file any other sort of motion explaining to the court exactly how it could have, how they could have amended their complaint to comply with the point that the district court made in its dismissal order. How does notice pleading fit into this situation? In other words, how specific did they have to be? Well, the federal courts, obviously the notice pleading standard does govern however, the Supreme Court has made clear that mere recitation of the elements of a cause of action are not sufficient. And there still needs to be some factual allegations included within a complaint to rise above the speculative level to show that the plaintiffs may be entitled to some relief here, particularly with the ADA and Rehabilitation Act claims, plaintiffs allege that, essentially allege that the defendants, had this policy that had a disparate impact on disabled individuals. And it's not completely clear from the allegation, but it appears they may also have been alleging that the appeal process was somehow discriminatory towards individuals. But again, particularly with the appeal process, as the district court noted, there's not even an allegation that any of these plaintiffs tried to appeal or when were unable to. There's also no allegations to any factual allegations to support plaintiff's claim that this general, this policy of the defendants or of the departments as to how they went about calculating these individuals income was somehow different than the way that it was calculating other individuals income. So again, these were largely just allegations made reciting the elements of these causes of action without really pointing to any particular factual claim that they may have to support what they were alleging. If the court has no further questions, we would ask that this court affirm the district court's judgment. Thank you. Thank you. I'll just say one more thing. What I was referring to is on page 25 of the blue brief. It's not, I don't need anything more on it. I just wanted to point out where it is, the bottom of page 25. Okay. Thank you. Thank you, Ms. Schenever. Anything further, Ms. Wong? Yes, Your Honor. I would just like to point out that R1 also refers to two other statutes in its prefatory clause, but that doesn't make it a subsection of those provisions either. Just because it references, it doesn't make it a subsection of them. A17 is different from AR1. 17 directs the agency to provide reasonable standards on how to do something. AR1 specifically directs that the individual's income shall take into account prior incurred expenses. Presumptively privately enforceable, the rebuttal presumption that Ms. Schenever was talking about was not something they argued in their earlier briefs. It's not in their motion to dismiss brief, and it's not in their reply brief. As we've said, they shouldn't be bringing it now. But even if the court were inclined to find it, the provisions that they refer to don't actually apply to this situation. This motion happened on the motion to dismiss, not the motion for summary judgment. If this record had been more complete, there would be evidence that residents have been denied administrative hearings on this issue. There would be correspondence requesting application of the deduction. There would be the resident's HFS-2500 forms showing complete blank. There'd be applications that show that the offset isn't even included on the application. There's no place to even request this. There would also be correspondence indicating that Illinois nursing home residents have been declined administrative hearings on this issue. Counsel, do you want to address the issue about whether you've properly pled the ADA rehabilitation claims? Yes, Your Honor, I would like to address that. Plaintiffs did specifically request leave to amend if the court found that there were not sufficient allegations. And the court didn't even address whether or not we should be allowed that. Defendants want to hold us to a motion to amend the standard. Do responses to motion to dismiss and do appellate briefs now have to complete the motion to amend standard? I have to, in addition to everything else I'm arguing, argue I should have been allowed to amend this, this, this, and this. That's not a tenable argument, Your Honor. I see my time's completed. I would ask that the court vacate this order and remand to the court, to the district court. If there's any further questions, if there's anything else I can do for Your Honors. Thank you for your time. Hearing nothing from my colleagues. You have my thanks. And the case is taken under advisement.